HENRY ET AL., APPELLANTS, *v.* BAHNS ET AL., BOARD OF COMMRS. OF GREENE COUNTY, APPELLEES.

(No. 590—Decided April 4, 1959.)

*Mr. Marcus Shoup,* for appellants.
*Mr. John G. Peterson,* prosecuting attorney, for appellees.

CRAWFORD, J. The plaintiffs, appellants herein, were petitioners for the tiling, straightening, etc., of a drainage ditch through their farm lands, opening into the Paullin open ditch in Greene County, Ohio. The county engineer filed reports and schedules as required by law and the commissioners, upon final hearing, made some revision in the assessements and ordered the letting of the contract.

Appellants appealed to the Court of Common Pleas as provided by Section 6131.25, Revised Code. A temporary restraining order was issued restraining the county commissioners from proceeding with the letting of the contract and from taking any further action. After a hearing *de novo* as provided in Section 6131.30, Revised Code, the Court of Com-

mon Pleas found in favor of the proposed improvement and ordered the finding certified to the county auditor in accordance with the then existing provisions of Section 6131.31 (F), Revised Code.

The present appeal to this court is noted on questions of law and fact. However, it was recognized at the time of argument that the appeal is actually one upon questions of law only and that the appellants had filed their bill of exceptions and assignments of error. Such a proceeding is not within those cases appealable on questions of law and fact (Section 2501.02, Revised Code), and the chapter on single county ditches, under which the proceedings were had, provides specifically for a bill of exceptions and review of the judgment of the Court of Common Pleas, as in other civil cases (Section 6131.30, Revised Code), and for appeal to this court on questions of law (Section 6131.35, Revised Code).

The appeal is accordingly reduced to one on questions of law.

The eight assignments of error are directed to so many acts, findings and conclusions of the court that we shall consider them together in examining the case as a whole.

Section 6131.30, Revised Code, requires the Common Pleas Court to hear the matters appealed *de novo*, under the rules of law and procedure for civil cases, bringing the entire proceedings before it, to determine all the issues raised in the proceedings and to enter final judgment. The burden of proof is placed upon the appellant owners.

The Supreme Court has construed this section to mean that the court is not in any sense bound, nor is it to be influenced, by the action previously taken by any administrative officer, but that it must exercise its own independent judgment on all issues of fact and law submitted for determination, and that the burden of proof is placed upon the appellants as a procedural matter. *In re Appeal in Joint County Ditch*, 122 Ohio St., 226, 171 N. E., 103.

It was the duty of the court to determine whether the improvement was necessary and would be conducive to the public welfare and whether the cost thereof would be less than the benefits. Section 6131.31, Revised Code.

No particular question has been raised as to the apportionment of assessments among those allegedly benefited. The contention of appellants is, rather, that the proposed plan would not be of any substantial benefit to anyone.

The basic issue raised is as to the adequacy of the size of tile proposed. The specifications call for approximately 1,840 feet of 10-inch tile, emptying into a 15-inch tile, which would continue approximately 850 feet to the Paullin open ditch. The slight grade diminishes as the ditch descends. Approximately the upper, or first, half of the 10-inch tile would lie on a 35 per cent grade, the second half on a 20 per cent grade, and the final 15-inch tile upon a 10 per cent grade. It was generally agreed that this is comparatively flat land and that so slight an incline requires larger tile than would a steep slope. The area to be drained appears to be in the neighborhood of 266 acres. There is little evidence as to the condition and texture of the soil.

Where the 15-inch tile is to begin, an existing 12-inch lateral ends, so that the proposed 15-inch tile would be required to serve both the 12-inch and the proposed 10-inch tiles.

Appellants contend that part, at least, of the proposed 10-inch tile should be 12-inch and that a substantial length of the ultimate tile, connecting with the open ditch, should be 18 inch. There is considerable controversy as to the proper size needed from the point where the proposed 10-inch and existing 12-inch lines would join the larger tile. It is admitted on both sides that if both the existing 12-inch and proposed 10-inch tiles were running full, the 15-inch tile could not accommodate the water coming to it from these two without causing some "head" or backing up of water.

The defendants, appellees herein, claim that the proposed improvement is adequate to handle the drainage problem presented, and that a certain head of water above the point of confluence need not necessarily be avoided.

The engineer who laid out the plan for the county engineer said there is room for a difference of opinion in such problems and that absolute precision is not possible.

Appellants produced two engineers who testified that the proposed improvement was inadequate.

Some of the appellants testified, giving their opinions to the same effect, and also stating their unsatisfactory experience in the past with an existing 10-inch tile which extends over part at least of the course now proposed to be served. Apparently no one knows the age of the present tile. It has become clogged, and the ground nearby shows the result of washes such as appellants' witnesses say are attributable to overloading the capacity of the tile.

The Court of Common Pleas made a finding of fact, which is embodied in the judgment entry, as follows:

"11. The court finds that the size of the tile as indicated on the profile plans is sufficient to accomplish the results intended, namely to carry away the water. In the actual laying of tile of this character there is provision made whereby water may seep and drain away from the joints, and the court is of the opinion that the application of some of the rules and laws of hydraulics that were testified to by the witnesses in this case would not be applicable to field tile because it is not laid so that it is water tight."

The expulsion of water through the joints is one of the results which appellants seek to avoid. The purpose of a farm drain tile is the disposal, not redistribution, of surplus water. It is not meant to transfer water from one farm and discharge it upon another, but to carry it entirely away so that no one's land will be flooded. The joints between the sections of tile are for the purpose of letting water in that it may be drained away, not to let it out to saturate the ground around it. There is expert testimony in the record on this point.

The evidence was clear that the old 10-inch tile was not working. Whether this was due to its age, neglect, or inadequate size, is not definitely proved. But when we have a competent engineer and appellant farm owners familiar with the situation testifying that there was evidence that the old 10-inch tile ditch failed, some of them testifying that water boiled up and that the tile "exploded," broke and was clogged, conditions which are often manifestations of inadequate capacity, their testimony is entitled to considerable weight. Appellants produced another engineering witness who supported their contentions, although his testimony was largely theoretical.

The appellant Henry, whose farm is so situated as to be next to the last which would be traversed by the proposed tile before it emptied into the open ditch, was so emphatic in his opinion of the inadequacy of the proposed tile that he declared he would never use it.

Some three years elapsed between the issuance of the temporary restraining order and the final hearing in Common Pleas Court. Appellants accuse appellees of laches in this connection. While we question the validity of that argument, the fact that appellants, on their part, were apparently willing to let the matter rest for this period may perhaps be taken as some indication of the sincerity and earnestness of their contention that it was less desirable to construct the proposed ditch than to have no new ditch at all.

The only representative of the county engineer's office who testified was a deputy who had not designed the improvement. He declined to express an opinion as to its advisability as proposed. He explained that the consulting engineer who did design it had been called in from the outside to relieve a temporary congestion of work in the engineer's office.

Two of the county commissioners who had ordered the improvement had either died or retired from office; the one remaining commissioner testified only to the proceedings which were had and laid no claim to any detailed knowledge and expressed no opinion. (He did testify there were no objections made at the commissioners' hearings; this circumstance appellants endeavored to explain as the result of misunderstanding.)

Three affected landowners were called by the appellees to testify. None of them exhibited any great interest or laid claim to any special knowledge of the subject; one disapproved the smaller tile proposed and said he had orally so stated to the commissioners; one thought the proposed tile was adequate, but had his own drain to the Paullin open ditch; and the third offered no particular opinion, had put in his own tile to the Paullin open ditch because he could not get any action, and followed the advice of a friend who told him to "put a ditch on your own place, and you won't have any fights."

The engineer who drew the plans and specifications for the county engineer expressed his belief that the smaller 10- and

15-inch tile would be adequate. In doing so, he gave his opinion that the existing 12-inch lateral, which would drain into the proposed 15-inch tile, is larger than required. He appeared to place some importance upon what he called the "history" of the old 10-inch tile, by which he obviously meant what people had told him about it. At the conclusion of his testimony he said, "We try to be a little bit on the under side rather than over size, purely from an economic standpoint."

We are of the opinion that appellants sustained their burden of proof, and that in reaching his conclusions the trial judge applied a mistaken theory as to the proper manner in which a farm tile drains.

The judgment is reversed and the cause remanded for further proceedings according to law.

*Judgment reversed.*

WISEMAN, P. J., and KERNS, J., concur.